UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TRUSTEES OF THE NATIONAL ORGANIZATION
OF INDUSTRIAL TRADE UNIONS INSURANCE
TRUST FUND AND AMALGAMATED UNION,
LOCAL No.1 affiliated with NOITU-IUJAT,

**REPORT AND**
**RECOMMENDATION**

Plaintiffs,

- against -

10 CV 0155 (SLT)

A-1 PLASTIC BAGS, INCORPORATED,

Defendant.
----------------------------------------------------------X

On January 13, 2010, plaintiffs Trustees of the National Trust Organization of Industrial Trade Unions Insurance Trust Fund (the "Fund"), and Amalgamated Union Local 1 (the "Union"), commenced this action against defendant A-1 Plastic Bags, Incorporated ("A-1"), pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132 and 1145 ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U. S.C. § 185, alleging that defendant A-1 failed to submit timely contributions and reports to the Fund as required by the terms of a collective bargaining agreement (the "CBA"). (Compl.[1] ¶¶ 12-15; Stark Aff.[2] ¶¶ 2-5).

Despite proper service, defendant has not answered or otherwise moved in response to the Complaint. On March 10, 2010, plaintiffs filed a motion for a default judgment, and on March 11, 2010, the Clerk of the Court entered a notation of default against defendant. On January 5, 2012, the district court referred plaintiffs' motion for a default judgment to this Court.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for a default judgment be granted, and that damages be awarded in the amount of $73,755.02.

---

[1] Citations to "Compl." refer to the Complaint, filed on January 13, 2010.

[2] Citations to "Stark Aff." refer to the Affidavit of Candice Stark, dated January 17, 2011.

## BACKGROUND

Plaintiffs are Trustees and fiduciaries of various jointly-administered, multi-employer benefit trusts within the meaning of Sections 3(1), 3(2), 3(3), and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(3)(1), (3)(2), (3)(3), and 1132(d)(1). (Compl. ¶ 5). Defendant A-1, which maintains its principal place of business in Newark, New Jersey, is a signatory to the CBA with the Union, and an employer within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5), and 1145. (Id. ¶¶ 10, 11, 12).

Pursuant to the CBA, which incorporates the Declaration of the National Organization of Industrial Trade Unions Insurance Trust Fund ("Trust Indenture"),[3] A-1 is required to submit certain payments to the Fund on behalf of each covered employee. (Stark Aff. ¶ 2, Ex. C; Compl. ¶ 13). The CBA and/or the Trust Indenture require that the employer submit written reports to the Fund setting forth the hours worked and the amount of contributions owed for each employee who performed work under the CBA. (Compl. ¶ 13).

On January 13, 2010, this action was commenced on behalf of the Trustees, seeking to recover unpaid contributions, union dues, interest, liquidated damages, reasonable attorneys' fees, and the costs of the action. The Summons and Complaint were served on A-1 by service on Sam Rosenberg, an agent authorized to accept service, on February 2, 2010. (See Docket Entry #2). Defendant has failed to file an Answer, respond to plaintiffs' Complaint, or otherwise appear and defend this action.

On March 10, 2010, plaintiffs filed a motion for default judgment, and on March 11, 2010, the Clerk of the Court entered a notation of default against the defendant. The case was thereafter referred to this Court to conduct an inquest and prepare a Report and Recommendation on damages, injunctive relief, and attorneys' fees. Having received no opposition papers from defendant, the Court has reviewed only the plaintiffs' submissions.

---

[3] Citations to "Trust Indenture" refer to the Declaration of Trust, a partial copy of which was filed on February 2, 2012, as Exhibit A to the Stark Affidavit.

## DISCUSSION

I. <u>Default Judgment</u>

A. <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. <u>See id.</u> Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment. <u>See</u> Fed. R. Civ. P. 55(b).

In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. <u>Id.</u> Accordingly, the plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. <u>See</u> <u>Erwin DeMarino Trucking Co. v. Jackson</u>, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: 1) whether the grounds for default are clearly established;

2) whether the claims were pled in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and 3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

## B. Entry of Default Judgment

In this case, plaintiffs allege in the Complaint that defendant A-1 violated the terms of the CBA and ERISA by failing to submit required reports and contributions to the Fund on time. (Compl. ¶¶ 15-16, 21-24). Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, defendant is required to make contributions to the Fund in accordance with the terms of the CBA. (Compl. ¶ 20). Accordingly, plaintiffs seek to recover the delinquent contributions, interest, and liquidated damages owed for the period alleged in the Complaint: May 2009 through November 2009. (Compl. ¶ 15). In addition, plaintiffs seek an award for delinquent dues, check-off payments for the period November 2009 as required by the CBA and Trust Indenture, as well as attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2). (Compl. ¶ 15; Stark Aff. ¶¶ 4-6).

Based on a review of the allegations in the Complaint, which are undisputed at this time, as well as the supporting documentation submitted in connection with this inquest, including the

4

terms of the CBA and the Trust Indenture (see Stark Aff., Ex. B), the Court finds that plaintiffs have sufficiently established liability as to warrant entry of a default judgment. See 29 U.S.C. § 1132(g)(2).

Not only have plaintiffs stated a valid claim, but it is beyond dispute that defendant is in default. Defendant has not responded to the Complaint, nor has defendant even appeared in this action by counsel. The failure by A-1 to obtain counsel in this case constitutes a failure to defend because defendant, being a corporation, cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Moreover, despite proper service, defendant has not only failed to file an Answer or otherwise move with respect to the Complaint, but defendant has also failed to respond either to plaintiff's Motion for a Default Judgment or the Order from this Court relating to the calculation of damages, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"), and thus, plaintiffs' evidence on damages is undisputed.

Finally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved. See id. (declining to enter default judgment, as plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Given the numerous opportunities afforded defendant, and its apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further. Accordingly, it is respectfully recommended that plaintiffs' motion for entry of a default judgment be granted.

II.  Damages

   A. Legal Standard

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [t]he court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>      (i) interest on the unpaid contributions, or
>      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

6

>   (E) such other legal or equitable relief as the court deems
>   appropriate.

Id.; see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).

### B. Monetary Damages

In this case, where plaintiffs have filed reasonably detailed materials pertaining to the damages incurred, and defendants have failed to make an appearance or otherwise respond and present evidence on the issue of damages, the Court is able to make an informed recommendation regarding damages.

#### 1. Delinquent Contributions

##### a) Unpaid Contributions

According to the Fund's records, at the time the lawsuit was commenced on January 13, 2010, A-1 had failed to pay dues and contributions to the Fund for the months of May 2009 through March 2010. (Stark Aff. ¶ 5). The amount reported as due for that period was $6,440.00 owed to the Welfare Fund, and $2,070.00 owed in dues. (Id.) Thereafter, A-1 paid the Welfare contributions and dues but not the interest and liquidated damages that were owed. (Id., Ex. C).

However, plaintiffs assert that since that time, A-1 has not paid Welfare Fund contributions for the period February 2011 through January 31, 2012.[4] (Id., Ex. C). Based on the Fund's calculations, it appears that defendant A-1 currently owes $28,114.00 in delinquent contributions for the period February 2011 through January 31, 2012.

---

[4] Even though the Complaint in this action was filed before the delinquencies that occurred from February 2011 through January 31, 2012, the Complaint contains a specific provision stating: "During the course of the instant action, additional contributions and/or delinquency charges may become due and owing." (Compl. ¶ 29). The Complaint seeks to have any such additional delinquencies included as part of the amount in this action. (Id.) Courts have held that when such forward-looking language is included in the Complaint, the Court may award damages even if the action had already been commenced. See King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006).

7

Having reviewed the plaintiffs' submissions, the Court respectfully recommends that the plaintiffs be awarded damages for the delinquent contributions owed for the period February 2011 through January 31, 2012 in the total amount of $28,114.00.

2. Interest

Pursuant to the CBA, contributions are due by the 5th day of the month and are considered delinquent if received thereafter. (Stark Aff. ¶ 3, Ex. A). Specifically, the Trust Indenture provides that when an employer fails to timely make the required contributions, the employer is required to pay interest on the delinquent contributions calculated at a rate of 6% per annum. (Stark Aff. ¶ 6).

Since interest is to be calculated from the fifth day of the month when payment becomes due until the date payment was made, plaintiffs calculated interest for each month owed by multiplying the amount of contributions owed to each Fund by the appropriate interest rate for the period owed until January 13, 2012. According to plaintiffs' calculations, defendant owes $513.63 in interest on the delinquent and late paid contributions for the period from October 2007 to January 13, 2012.

3. Liquidated Damages

Plaintiffs also request an award of liquidated damages for late contributions. Pursuant to ERISA and the Trust Indenture, plaintiffs are entitled to liquidated damages for unpaid contributions. See 29 U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages not to exceed 20% of the unpaid contributions); (see also Stark Aff. ¶ 6).

Based upon defendant's failure to timely remit $28,627.63 in required contributions to the Fund for the relevant periods, the Court determines that defendant owes a total of $5,725.53 in liquidated damages, which represents 20% of the unpaid contributions.

Accordingly, pursuant to the CBA and Section 1132(g)(2)(c) of ERISA, the Court

8

respectfully recommends that the Fund receives an award for liquidated damages in the total amount of $5,725.53 for the unpaid contributions.

4. Attorneys' Fees

a) Standards

Plaintiffs also request reasonable attorneys' fees and costs in connection with this action, pursuant to 29 U.S.C. § 1132(g)(2)(D), which provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs.

When assessing whether legal costs are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. . . .

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at* 7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk,

9

No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively. . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono. . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, while taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998)); Bourgal v. Atlas Transit Mix, No. 93 CV 0569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996).

b) Billing Rates

In this case, plaintiffs were represented by the firm of Barnes, Iaccarino & Shepard, LLP (the "Firm"), which is located in Hempstead, New York. (Carney Aff.[5] ¶ 1). In that regard, the

---

[5]Citations to "Carney Aff." refer to the Attorney Fees and Costs Affirmation of Danielle M. Carney, Esq., dated January 11, 2012.

10

Fund submitted contemporaneous billing records in accordance with N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), showing the legal services rendered by the Firm for work performed from November 2, 2009 through March 10, 2010; for each date on which services were rendered, the billing records include the name of the attorney performing the services, a description of the services performed, the amounts of time spent, and the rates at which the services were charged. (Id. ¶ 5, Ex. A).

Plaintiffs seek a total of $2,000.00 for work performed by the Firm in connection with this matter. According to Mr. Carney's Affirmation, she and another attorney spent 10 hours preparing the demand letter, summons and complaint, and request for default. (Id., Ex. A). Ms. Carney states that associates at the Firm bill at the rate of $200.00 per hour. (Id.) This rate is within the range of rates generally charged by similarly experienced attorneys in this district performing this type of work in connection with an ERISA default. See, e.g., Finkel v. Triple A Group, Inc., No. 07 CV 2653, 2010 WL 1688359, at *9 (E.D.N.Y. April 27, 2010) (determining that hourly rates for associates ranging from $200.00 to $225.00 are reasonable in connection with an ERISA inquest); Finkel v. Jones Lang LaSalle Americas, Inc., No. 08 CV 2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding that hourly rates of $235.00 for senior associates and $225.00 for junior associates were reasonable); Finkel v. Rico Electric, Inc., No. 05 CV 2145, 2009 WL 3367057, at *11 (E.D.N.Y. Oct. 16, 2009) (awarding attorneys with five years of employee benefits experience fees at the rate of $225 per hour in a similar ERISA inquest).

Accordingly, the Court respectfully recommends that the requested rate of $200 per hour be approved.

Having determined that the rate charged is reasonable, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., 2009 WL

11

240521, at *4. If the number of hours billed are determined to be unreasonable, the court may exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Based on the contemporaneous billing records submitted to the Court in connection with the instant motion, the Firm seeks compensation for a total of 10 hours of work on this matter from November 2, 2009 through March 10, 2010. (Stark Aff., Ex. A). Having examined the billing records, the Court finds that the number of hours charged in this matter is reasonable given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim.

Accordingly, based on the hourly rate set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $2,000.00 in attorneys' fees.

### 4. Costs

Plaintiffs also seek an award of reasonable costs incurred in the amount of $500.00 for service and filing fees. (Stark Aff., Damages Stmt.[6] at 1; Carney Aff. ¶ 7). Having reviewed the request, the Court respectfully recommends that plaintiffs be reimbursed for their costs of $500.00.

## C. Injunctive Relief

ERISA states that a civil action may be brought by a fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3). When defendant is in default and the applicable statute allows for injunctive relief, the Court must find that plaintiffs have shown that they meet the requirements for obtaining a

---

[6] Citations to "Damages Stmt." refer to the revised Statement of Damages, attached as a supplement to the Affidavit of Candice Stark, filed on February 1, 2012.

12

permanent injunction, including a showing of irreparable harm. See La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 349-50 (E.D.N.Y. 2009). Plaintiffs must also show an absence of another adequate remedy at law. Id.

Although in the Complaint, plaintiffs seek a permanent injunction "enjoining defendant from any further or future violations of this or subsequent Collective Bargaining Agreements" with the Union (Compl. ¶ 34), plaintiffs have not demonstrated the necessity of a permanent injunction. Indeed, in submitting their inquest papers, counsel appears to have abandoned the request for injunctive relief. Without allegations of more pressing need or a lack of legal alternatives, the Court cannot conclude that a permanent injunction is necessary to prevent irreparable harm and that there exists no adequate remedy at law.

Accordingly, the Court respectfully recommends that plaintiffs' request for the issuance of a permanent injunction be denied.

## CONCLUSION

The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages from defendant Interstate: 1) $28,114.00 in delinquent contributions; 2) $513.63 in interest on the untimely paid contributions; 3) $5,725.53 in liquidated damages; and 4) $2,500.00 in attorney's fees and costs. Therefore, the Court recommends that plaintiffs be awarded a total of $36,853.16. In addition, the Court recommends that plaintiffs' motion for injunctive relief be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

13

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 29, 2012

/s/ CHERYL

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York